*1039 OPINION.
Trammell:
It is the contention of the petitioners that the stock transaction was not completed in 1924 so as to be taxable in that year; that the “ secondary distribution ” of the stock was only a part of the underwriting scheme; and that it is necessary to look to the 1924 transaction as well as the 1925 transaction in order to determine whether there is a profit. The petitioners’ brief states their contention as follows:
The agreement to purchase the stock and the undertaking with respect to the “ secondary distribution ” thereof constituted a single transaction.
*1040 We do not understand that the Commissioner has determined a tax for the year 1924 based upon the purchase of stock alone. The fact is that the petitioners acquired the stock and sold it in 1924 and the partnership realized, according to the Commissioner’s determination, $280,209.21 as profit, which it prorated to the individual partners. In 1925, in order to support the market and afford a secondary distribution of the stock, the partnership lost money. We agree that pursuant to the obligation of the partnership it was necessary for it to continue to deal in stock in 1925 for the purpose of supporting the market and afford the secondary distribution, which obligation it was necessary to assume in order to put the stock upon the stock exchange and to carry out its original obligation in connection with the underwriting. However, we see nothing in this transaction or undertaking inconsistent with the Commissioner’s theory that the profit made in 1924 should be subject to tax in that year, and that any profit or loss in 1925, as the result of buying and selling stock in that year in order to bolster up the market, should be treated for tax purposes separately. If a profit was made in 1925 it should be taxed in that year and any loss sustained in that year would be deductible in computing income, if any, for that year. Even considering the underwriting agreement and the agreement with respect to the secondary distribution of the stock in order to protect the market as one transaction, in our opinion, it would be governed by the rule laid down by the Board in the case of Consolidated Asphalt Co., 1 B. T. A. 79, where we said:
It is quite true that not all amounts received constitute income; but when a- taxable corporation in the course of its business of making profits receives contractual compensation for work done and material furnished, it cannot contend that a part of the amount received is not income because the taxpayer is subject to a collateral obligation, the fulfillment of which may require it to spend some of the amount.
The petitioners rely on our decision in Henry S. Parker, 11B. T. A. 1336. In that case two individuals named Kinne and Lyon, in 1919, approached the partnership of Colgate, Parker & Company with a proposition to acquire the stock of the Mercer Motors Company and sell the same through a syndicate. The partnership agreed to the arrangement on the basis of dividing the profits, one-half to the partnership and one-half to Kinne and Lyon. Thereupon, the partnership and Kinne and Lyon (purchase group) purchased 89,000 shares of Mercer Motors stock and at the same time it entered into an agreement with Kinne and Lyon to form a syndicate (selling group) to sell the stock. The partnership was to be the manager of the syndicate, with power to purchase and sell said stock at such time or times and upon such terms as the partnership should deter *1041 mine. The principal function of this selling group was to make secondary distribution of the stock. The purchase group, after purchasing the stock went through the form of selling it to the same individuals as the selling group and erroneously entered on their books a profit from this transaction. This so-called profit we held was not income. The question there was whether the transfer from the purchasing group to the selling group was a closed transaction resulting in gain or loss. The partnership and Kinne and Lyon were working together. When the transfer was made from the purchase group to the selling group no profit actually resulted, because it was agreed that it was merely turned over for sale and no sale to outsiders had actually occurred. It could not be determined what the profit would be until there were some actual sales. The selling group which received the stock was to sell the stock and profits to be derived from sales were to be divided. We held in that case that there was no gain or loss until the transaction was completed.
But here we have a different situation. In this case profit was actually realized in 1924. The partnership received the cash in that year from the purchase and sale of the stock. The agreement to protect the market for a reasonable time after 1924, although it may be held to be in substance and effect a part of the original agreement, does not prevent what was received as income in 1924 from being taxed as income in that year. This case is in some respects similar to the case of J. C. Clemmons, 20 B. T. A. 334; affd.. 54 Fed. (2d) 209. In that case two individuals sold one-half of the corporation’s stock and made a collateral agreement to do other things. It was contended that no gain should be reported upon the sale of the stock until the collateral agreement had been complied with. The court rejected this theory and held that there was gain or loss on the sale of the stock, notwithstanding the fact that the sellers were obligated to do other things in the future. The court said:
They (the sellers) received and receipted for the cash payment, and the notes representing the balance of the purchase money were payable to them. The proceeds were deposited by them in bank to their own credit. The written agreement to help build a theatre in the future did not require that any particular money be used; and, if it had, it would not prevent the gain from the sale which produced the money being taxable, there being merely an investment provided for it in advance of its receipt. Lonsdale v. Commissioner (C. C. A.), 32 Fed. (2d) 537; Detroit Egg Biscuit Co. v. Commissioner, 9 B. T. A. 1365; Hoult v. Commissioner, 24 B. T. A. 79.
****$$:!:
There was a completed sale of the stock by Gordon and Clemmons in 1925 resulting in gain; in nowise defeated by the collateral agreement to make future contribution to or for the use of the corporation, or by the pledge cf *1042 the purchase price to secure this being done, or by the actual use of part of it in making the contribution.
The case at bar is even stronger on its facts than the Clemmons case, supra. In this case the petitioners bought and sold stock in 1924 and realized a profit therefrom. In 1925 the partnership of which the petitioners were members bought and sold stock resulting in a loss. The money received in 1924 was not deposited for the purpose of securing the carrying out of the contract to protect stock.
Even if we should hold that the two contracts involved in this case are tied up together and each mutually dependent upon the other, it does not follow that the determination of gain or loss from the purchases and sales of one contract is dependent upon the amount of gain or loss from the purchases and sales under the other contract. Even if there had been one contract and not two, which ran over from one year into the next and involved purchases and sales, the gain or loss in one year should not be postponed until the gain or loss in the subsequent year is determined. On the petitioners’ theory, if gain had been realized in 1925 out of the dealings in stock to protect the market, all of the gain in 1924 should be added to the gain in 1925 and taxed in that year. We think this is inconsistent with the theory of taxation, which is based upon an annual accounting. The gains should be taxed in the year in which received. Each year is on a separate basis. This contract does not involve one single transaction even though we consider the two contracts as one. Even if it were one which involves several transactions, it would not be necessary to wait until all the transactions had been completed to determine the gain. If this were true, a person who secured a contract for a term of years to sell stock on a commission basis and agreed to pay his own expenses would have to wait until the expiration of his contract to determine his gain or loss. We think the more correct method would be to determine, the gain or loss on a, contract involving separate transactions computed on an annual basis.
The sales made in 1924 by the partnership were fully completed and closed in 1924. Title to the stock passed to the purchasers and payment therefor was received. The partnership was not under obligation to the purchasers to buy this stock back at any time or at any price. The partnership’s participation in the syndicate formed to trade in stock, and the fact that it did trade in stock in the following year, does not prevent the gain received in a previous year from buying and selling stock being taxable in that year. It is our opinion, therefore, that the Commissioner properly determined the tax upon the 1924 gains and that those gains should not be offset by 1925 losses in dealings in stock.

Judgment will be entered under Rule BO.